IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONNA L. SMITH, | ) | CASE NO. 5:13 CV 870 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | **MEMORANDUM OPINION AND** |
| | ) | **ORDER** |
| Defendant. | ) | |

## Introduction

**A.      Nature of the case and proceedings**

Before me[1] is an action by Donna L. Smith under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her applications

for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] The

Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my

---

[1] ECF # 23. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 12.

[4] ECF # 13.

initial[5] and procedural[6] orders, the parties have briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## B.  Background facts and decision of the Administrative Law Judge ("ALJ")

Smith, who was 51 years old at the time of the hearing,[11] has a high school education and previously worked as a laundry worker and as a marker, both of which are unskilled.[12]

The ALJ, whose decision became the final decision of the Commissioner, found that Smith had the following severe impairments: degenerative disc disease of the lumbar, thoracic and cervical spines resulting in pain; spondylosis and radiculitis; left carpal tunnel syndrome; and obesity.[13]

After concluding that the relevant impairments did not meet or equal a listing,[14] the ALJ made the following finding regarding Smith's residual functional capacity ("RFC"):

---

[5] ECF # 5.

[6] ECF # 14.

[7] ECF # 21 (Commissioner's brief); ECF # 17 (Smith's brief).

[8] ECF # 21-1 (Commissioner's charts); ECF # 18 at 3-6 (Smith's charts).

[9] ECF # 18 at 1-2 (Smith's fact sheet).

[10] ECF # 25.

[11] ECF # 13, Transcript ("Tr.") at 22.

[12] *Id.*

[13] *Id.* at 13.

[14] *Id.* at 15.

After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can never climb ladders, ropes or scaffolds. However, the claimant can occasionally climb ramps or stairs. Further, the claimant can frequently balance, kneel, crouch and crawl. Moreover, the claimant can frequently reach overhead with her left upper extremity. Lastly, the claimant can never use moving machinery and be exposed to unprotected heights.[15]

The ALJ decided that this residual functional capacity precluded Smith from performing her past relevant work as a laundry worker.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Smith could perform.[17] The ALJ, therefore, found Smith not under a disability.[18]

**C.    Issues on judicial review and decision**

Smith asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Smith's challenge presents the following two issues for judicial review:

---

[15] *Id.* at 16.

[16] *Id.* at 22.

[17] *Id.* at 22-23.

[18] *Id.* at 23.

-3-

- The ALJ gave little weight to the opinions of two of Smith's treating physicians, Drs. Kemper and Eichner, regarding Smith's ability to stand, walk, or sit for prolonged periods of time. Did the ALJ properly analyze these opinions and give good reasons for the weight assigned to them?

- The ALJ recognized no mental impairments as severe and incorporated into the RFC no mental limitations. Does substantial evidence support these findings?

**D.**     **Disposition**

For the reasons that follow, I will conclude that the ALJ's finding of no disability is, as concerns the first issue on review, not supported by substantial evidence and, therefore, must be reversed, with the matter remanded for re-evaluation of this finding. Further, I will determine that there was no error in finding the psychological impairments to be non-severe, so any remand will not include any new discussion of this issue.

## Analysis

**A.**     **Standards of review**

*1.*     *Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant

-4-

evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[19]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[20] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[21]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

## 2.    *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from

---

[19] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[20] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[21] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[22]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[23]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[24] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[25]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[26] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[27] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[28] In deciding if such

---

[22] 20 C.F.R. § 404.1527(d)(2).

[23] *Id.*

[24] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[25] *Id.*

[26] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[27] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[28] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[29]

In *Wilson v. Commissioner of Social Security*,[30] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[31] The court noted that the regulation expressly contains a "good reasons" requirement.[32] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[33]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[34] It drew a distinction between a

---

[29] *Id.* at 535.

[30] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[31] *Id.* at 544.

[32] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[33] *Id.* at 546.

[34] *Id.*

-7-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[35] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[36] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[37]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[38] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[39] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[40] *Blakley v. Commissioner of Social Security*,[41] and *Hensley v. Astrue*.[42]

---

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (2013).

[39] *Id.* at 375-76.

[40] *Rogers*, 486 F.3d at 242.

[41] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[42] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[43] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[44] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6) and §§ 416.927(d)(2)(i)-(ii), (3)-(6).[45] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[46]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[47] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[48] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary

---

[43] *Gayheart*, 710 F.3d at 376.

[44] *Id.*

[45] *Id.*

[46] *Rogers*, 486 F.3d at 242.

[47] *Gayheart*, 710 F.3d at 376.

[48] *Id.*

criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[49] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[50] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[51]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.

> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[52]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[53] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[54] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d 234 at 242.

[54] *Blakley*, 581 F.3d at 406-07.

physician disagrees with the opinion of a non-treating physician[55] or that objective medical evidence does not support that opinion.[56]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[57] The Commissioner's *post hoc* arguments on judicial review are immaterial.[58]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[59]

---

[55] *Hensley*, 573 F.3d at 266-67.

[56] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[57] *Blakley*, 581 F.3d at 407.

[58] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147 (N.D. Ohio Jan. 14, 2010).

[59] *Blakley*, 581 F.3d at 407-08.

- the rejection or discounting of the weight of a treating source without assigning weight,[60]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[61]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[62]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[63] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[64]

The Sixth Circuit in *Blakley*[65] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[66] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions,

---

[60] *Id.* at 408.

[61] *Id.*

[62] *Id.* at 409.

[63] *Hensley*, 573 F.3d at 266-67.

[64] *Friend*, 375 F. App'x at 551-52.

[65] *Blakley*, 581 F.3d 399.

[66] *Id.* at 409-10.

-12-

substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[67]

In *Cole v. Astrue*,[68] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[69]

**B.    Application of standards**

*1.    The ALJ erred in the application of the treating physician rule and good reasons standard.*

This case raises again the issue of the proper application of the treating source regulations as interpreted by the case law of the Sixth Circuit. A substantial percentage of the social security cases before me for decision raise this issue.[70] I have discussed above the Sixth Circuit case law interpreting the treating source rule and will not restate it here in detail.

As emphasized by the Sixth Circuit's recent opinion in *Gayheart*, the ALJ must make an express finding regarding the controlling weight of a treating source's opinion. In doing

---

[67] *Id.* at 410.

[68] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[69] *Id.* at 940.

[70] Nearly half of the cases on my current social security docket (14 out of 27) involve issues arising from the application of the treating physician rule/good reasons requirement.

so, the ALJ must apply the factors identified in the regulation, (1) whether the opinion is well-supported by clinical laboratory diagnostic techniques, and (2) is the opinion consistent with other substantial evidence in the administrative record. Even if not given controlling weight, a rebuttable presumption exists that the opinion should receive great deference. If the ALJ does not give the opinion great deference, he must state good reasons for not doing so keyed to the factors in the regulation. It is not enough to make conclusory statements referencing the factors in the regulation without discussion of the evidence.

As the *Gayheart* court stated, the conclusion that opinions are not well-supported by objective findings without more is ambiguous.[71] The court observed in *Rogers* that the mere reference to the factors set out in the regulation does not satisfy the good reasons requirement.[72] And as the court explained in *Friend v. Commissioner of Social Security*, "it is not enough to dismiss a treating physician's opinion as 'incompatible' with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion gets the short end of the stick."[73] One district court in the circuit has properly observed that, to satisfy the good reasons requirement, the ALJ need to do more than refer generally to treatment notes and clinical findings because such conclusions beg the question "what treatment notes? what clinical findings?"[74]

---

[71] *Gayheart*, 710 F.3d at 377.

[72] *Rogers*, 486 F.3d at 245-46.

[73] *Friend*, 375 F. App'x 543, 552.

[74] *Hale v. Colvin*, No. 3:13cv182, 2014 WL 868124, at *6 (S.D. Ohio Mar. 5, 2014).

Here the ALJ did not make an express finding about controlling weight as to either treating source opinion. He assigned Dr. Kemper's opinion "little weight," giving as the explanation the short treatment history, inconsistencies with the medical evidence of record, and inconsistency with Smith's testimony in the case.[75] Although a short treatment history is one factor for assigning weight less than controlling, the ALJ's statement about the other factors is conclusory. As to inconsistency with the medical evidence of record, he cites one page of the treatment notes of Dr. Jaberi, a neurologist.[76] That page merely documents "cervical spondylosis with chronic neck pain and intermittent pain in the upper extremities."[77] The next page, part of the treatment notes for the same date, makes reference to pain controlled with amitriptyline.[78] Dr. Jaberi does not explain, however, what he means by "controlled." As counsel for Smith has pointed out, Dr. Jaberi's treatment notes overall, including MRI studies made a part thereof, reflect progressive degeneration of the cervical spine at multiple levels with nerve impingement. The ALJ's reference to one page of multiple treatment notes simply does not constitute sufficient statement of good reasons for assigning little weight to Dr. Kemper's opinion regarding specific work-related limitations.

As for inconsistencies in Smith's testimony about her pain, the ALJ points to a single reference in one of Dr. Jaberi's examination notes – "Functionally independent in all

---

[75] Tr. at 21.

[76] *Id.* at 591.

[77] *Id.*

[78] *Id.* at 592.

-15-

activities of daily living, ambulation and the stairs."[79] The basis for this observation is not evident in Dr. Jaberi's treatment notes. It is not clear from this note if this was Smith's report or a conclusion by Dr. Jaberi. Smith consistently reported in both her function report to the state agency[80] and in her testimony at the hearing[81] limitations consistent with those opined by Dr. Kemper.[82] Further, she reported similar limitations in the medical history that she completed for Dr. Jaberi.[83] The state agency asked Dr. Jaberi to complete a functional capacity report, but he failed to do so.[84]

The ALJ's treatment of Dr. Eichner's opinion is even more deficient. Again, he made no finding regarding controlling weight. In assigning "little weight" to the critical portion of Dr. Eichner's opinion, he merely made the conclusory statements that the opinion was not consistent with the medical evidence or with Smith's testimony without reference to the record.[85]

---

[79] Id. at 493.

[80] Id. at 225-33.

[81] Id. at 37-46.

[82] As the Sixth Circuit observed in Cole, 661 F.3d at 939, "the ALJ's focus on the claimant's ability to do certain activities in discounting the treating source's opinion does not constitute 'good reasons' for doing so when the claimant's testimony and other record evidence contradicts the ALJ's finding.

[83] Tr. at 507.

[84] Id. at 605-06.

[85] Id. at 22.

-16-

In response the Commissioner admits technical noncompliance with the regulations as interpreted by the Sixth Circuit. The Commissioner, commendably, does not advocate a "free range" *de novo* review of the administrative record, with the help of *post hoc* rationalization by Commissioner's counsel, as an approach to justify affirmance. Such an approach would be contrary to case law stating that even if the record contained substantial evidence to support the ALJ's conclusion, violation of the treating physician rule by failing to articulate that evidence as a good reason for lesser weight constitutes reversible error.[86] Rather, the Commissioner advocates affirmance because the ALJ's decision contains articulation outside the weight analysis addressing regulatory criteria. According to the Commissioner, this would include mere citations to specific evidence that upon review would support affirmance under factors set out in the regulations. The Commissioner submits that this broader approach is necessary because of the realities of the administrative process – *i.e.*, too many cases and not enough staff support for the administrative law judges.

According to the Sixth Circuit, the touchstone in applying the treating physician rule must be meaningful judicial review.[87] Although the ALJ is not required to discuss every piece of evidence, he must "build a logical bridge from the evidence to the conclusion."[88] The ALJ

---

[86] *Blakley*, 581 F.3d 399.

[87] *Wilson*, 378 F.3d at 544, cited in *Gayheart*, 710 F.3d at 376.

[88] *Hale*, 2014 WL 868124, at *8.

-17-

must make some effort to identify specific discrepancies and explain why the treating physician's opinion should not receive controlling weight or great deference.[89]

Although the court may look beyond the ALJ's weight analysis for explanation of the weight decision, the review is limited to the articulation in the opinion itself that explains the decision in terms of regulatory factors, not mere reference to exhibits within the record that, if reviewed by the court, may support the ALJ's weight decision.

The regulations at issue are the Commissioner's. If the realities of the administrative process make the requirements too difficult for ALJs to comply with, then the Commissioner could amend the regulations to adopt requirements more along the lines of totality of the evidence with factors that may but need not be considered in weighing the treating physicians' opinions. Further, this amendment could require an explanation less than a statement of "good reasons" in support of the weight assignment.

I realize that I do not see the world from the perspective of the ALJs, and I am reluctant to lecture them on how they should decide their cases. But, given the Sixth Circuit's continuing, unvaried insistence over the past 10 years on compliance with the "good reasons" requirement in the regulations as a mandatory procedural protection,[90] it appears not too much to ask the ALJs to provide adequate, unified statements with good reasons supporting

---

[89] *Friend*, 375 F. App'x at 543.

[90] *Hale*, 2014 WL 868124, at *5.

-18-

the weight assigned to treating physician opinions. Perhaps the following language will provide useful direction toward achieving such statements:

> [Medical source], a treating physician, has given an opinion [summarize opinions as to diagnosis, severity, and limitations (as applicable)].  I do not give that opinion controlling weight because I find it not well supported by clinical and laboratory diagnostic techniques [citation to record evidence in support of the finding with explanation of reasons] and inconsistent with other substantial evidence in the administrative record [citation to record evidence in support of the finding with explanation of reasons]. I assign that opinion [specific weight assignment]. [Identification of the applicable factors in 20 C.F.R. §§ 1527(c)(2)(i)-(ii) and (c)(3)-(6) and citation to record evidence in support of the finding with explanation of reasons].

### 2.  *There was no error in not finding that Smith's psychological impairments were not severe.*

As the Commissioner observes, the regulations themselves, as well as Agency rulings interpreting the regulations, provide that an impairment is severe only if it significantly limits a claimant's ability to perform basic work activities.[91] Here, Smith argues that even accepting the ALJ's finding that she has only mild limitations in (1) activities of daily living; (2) social functioning; and (3) concentration, persistence and pace, "even a mild limitation in *all three* of these areas could reasonably be expected to more than minimally affect Ms. Smith's work ability."[92] In addition, she maintains that the "non-severity finding is inconsistent with the consultative examination report of Dr. Harvan," who noted two prior suicide attempts, a GAF

---

[91] ECF # 21 at 18 (citing C.F.R. §§ 404.1521(a), 416.921(a); SSR 85-28).

[92] ECF # 17 at 17 (emphasis in original).

score of 60, and found a "mild" impairment in Smith's ability to understand and follow instructions as well as in her ability to withstand stress and pressures of day-to-day work.[93]

Smith appears to argue without supporting authority that mild limitations must necessarily be transformed into a significant limitation on a person's ability to perform basic work activities when the admittedly mild limitations are aggregated.  In fact, there is no such alchemy involved. The rule remains that the severity requirement cannot be met "when the medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs."[94]

In this case, as the ALJ noted, Dr. Harvan found that Smith's psychological impairments were mild and that the GAF score he assigned was at the high end of mild symptoms.[95] In addition, the ALJ also observed that state agency psychological consultants opined at the reconsideration stage "that Smith does not have a severe mental impairment" but only mild limitations in specified areas and no episodes of decompensation of extended duration.[96] Moreover, the state agency medical consultants, whose opinions, like those of the psychological consultants, were given great weight by the ALJ because they had the benefit

---

[93] *Id.*

[94] SSR 85-28.

[95] Tr. at 20.

[96] *Id.* at 21.

-20-

of considering Smith's "longitudinal record," determined that Smith "retains the functional capacity to perform work at the light exertional level."[97]

As Magistrate Judge Armstrong recently observed, it is well-established that "state agency medical and psychological consultants are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation."[98] Although the opinions of state agency consultants are not binding, an ALJ must consider their opinions and must explain the weight given to their opinions in the decision.[99] As such, "[t]he opinions of state agency consultants regarding the nature and severity of an individual's impairments constitute expert opinion evidence upon which an ALJ may rely."[100]

Here, the ALJ, in conformity with the applicable standard, considered the opinions of  the state agency consulting physicians and psychologists as to the severity of Smith's mental impairments, assigned a weight to those opinions, and provided a reason on the record for that weight. Moreover, as noted, the ALJ was entitled to rely on those opinions on the specific point that Smith's psychological impairment was not severe, inasmuch as that conclusion is not contrary to the conclusions of any of the consultative psychological examiners, including Dr. Harvan.

---

[97] *Id.*

[98] *Lewis v. Comm'r of Soc. Sec.*, 2013 WL 5563764, at *30 (N.D. Ohio Sept. 30, 2013) (citation omitted).

[99] *Id.* (citation omitted).

[100] *Harris v. Astrue*, 2012 WL 3656402, at * 8 (N.D. Ohio August 23, 2012) (citation omitted).

Accordingly, with no basis in law or reasoning to disturb this determination of the ALJ, I find that Smith's second issue on appeal is without merit.

## Conclusion

For the reasons stated above, substantial evidence does not support the finding of the Commissioner that Smith had no disability. Therefore, the denial of Smith's applications is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: May 14, 2014                          s/ William H. Baughman, Jr.
                                             United States Magistrate Judge